THOMAS R. BURKE (State Bar No. 141930)
  thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Plaintiffs
PRO PUBLICA, INC. and A.C. THOMPSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PRO PUBLICA, INC., and A.C. THOMPSON,<br><br>          Plaintiffs,<br><br>     v.<br><br>NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION,<br><br>          Defendants. | Case No. 4:22-cv-6710<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.** |

Plaintiffs Pro Publica, Inc. ("ProPublica") and A.C. Thompson ("Thompson") (collectively, "Plaintiffs"), by their undersigned attorneys, allege as follows:

## INTRODUCTION

1. For more than half a century, the National Highway Traffic Safety Administration ("NHTSA" or "Defendant") has been acutely aware of the dangers posed by cars crashing into one of the approximately 13.5 million large trucks that travel the nation's highways. In these so-called "underride" collisions, a car can easily slide underneath the truck with little resistance, meaning that the body of the truck slams the car's passenger compartment, often leading to decapitation or fatal head trauma. Pickup trucks and motorcycles face similar dangers. The NHTSA's own research shows that over 4000 people have died in underride crashes since 1994; most experts – including researchers at the Government Accountability Office – believe the real number is far higher.

2. Federal transportation agencies – including the NHTSA, founded in 1970 – began examining safety equipment on large trucks after the death of Jayne Mansfield, who was killed when her Buick Electra crashed into the back of a tractor-trailer outside New Orleans in 1967. It quickly became clear that the rules regarding rear bumpers, known as guards, on vehicles with a gross weight of 10,000 pounds or more were insufficient to prevent serious injury or death. Guards were too weak or were hung too high to adequately intercept a car or pickup truck, and some did not cover the full width of the truck. Moreover, large numbers of trucks were exempted from having any rear guard of any kind.

3. Yet despite these and similar findings, the NHTSA has moved very slowly to raise the safety standards for large trucks and trailers. In 1981 and 1992, for instance, the NHTSA issued Notices of Proposed Rulemaking regarding new Federal Motor Vehicle Safety Standards that would have required new, stronger types of rear guards for large trucks and trailers. Despite both Notices receiving thousands of comments, the NHTSA ultimately declined to adopt either rule.

4. It took the agency more than 30 years to adopt and implement a rule requiring that semi-trailers come off the assembly line equipped with stronger rear guards. But in a series of

DAVIS WRIGHT TREMAINE LLP

1  crash tests, the Insurance Institute for Highway Safety, a credible, long-standing research and
2  advocacy group, demonstrated the fallibility of rear guards built to this new standard, which was
3  implemented in 1998. The new model guards repeatedly collapsed when struck by a Chevrolet
4  Malibu at even a low rate of speed.

5.  The most recent regulatory action occurred this year, when the NHTSA raised the strength and energy absorption requirements for rear guards, saying the new rule will "help to keep drivers safe and prevent deadly crashes." Trailer manufacturers will have to comply with the new standard by 2024. However, safety advocates, including the Insurance Institute, argue that this new regulation still doesn't go far enough and note that other major industrialized nations require that trucks and trailers be equipped with stronger guards. And the latest rule continues to exempt many classes of trucks.

6.  The NHTSA's slow pace seems to be due, at least in part, to its continued reliance on the faulty Fatality Analysis Reporting System ("FARS"), which undercounts underride deaths by as much as 50 percent, according to government and academic experts.  FARS data continues to form the foundation of America's transportation safety policy, and because new safety rules are judged on a cost-benefit basis, the NHTSA consistently has concluded that safety improvements to America's trucks would be too costly.  Trucking industry lobbying groups espouse the same position.

7.  On August 24, 2022, Thompson, a staff reporter at ProPublica, made a Freedom of Information Act request to the NHTSA for information about its analyses of and conclusions regarding underride collisions, including about its decision to not implement the 1981 and 1992 rules.  More than two months later, no documents, responsive or otherwise, have been produced.

8.  Plaintiffs bring this action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*., as amended ("FOIA"), to enjoin the NHTSA from continuing to improperly withhold agency records that are responsive to the FOIA request Plaintiffs sent in August 2022 (the "FOIA Request").  This FOIA action is necessary because Defendant continues to withhold responsive records since Plaintiffs made the FOIA Request over two months ago, a constructive denial of the FOIA Request.

DAVIS WRIGHT TREMAINE LLP

9. The Freedom of Information Act "'focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted). ProPublica plays a critical role in providing information to citizens about "what their government is up to." Indeed, the First Amendment's guarantee of freedom of the press is meant to enable journalists to play an "essential role in our democracy," to "bare the secrets of government and inform the people." *New York Times. Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J. concurring).

10. Through their FOIA Request, Plaintiffs seek to fulfill their journalistic function and to shine a public light on information about the danger, long underreported and unaddressed by the federal government, of so-called "underride" collisions between large trucks and smaller vehicles, such as cars, pickup trucks, and motorcycles, on the nation's highway system.

**PARTIES**

11. Plaintiff ProPublica is a non-partisan newsroom headquartered in New York City. It is a Delaware non-profit corporation, and is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. ProPublica is dedicated to producing investigative journalism in the public interest. Specifically, its stated mission is to "expose abuses of power and betrayals of the public trust by government, business, and other institutions, using the moral force of investigative journalism to spur reform through the sustained spotlighting of wrongdoing." It has been honored with numerous awards, including six Pulitzer Prizes. ProPublica publishes its reporting through its website, www.propublica.org, and in partnership with more than 180 news organizations across the country, including The New York Times, The Washington Post, Politico, NPR News, The Miami Herald, The New Yorker, The Boston Globe, The Los Angeles Times, and Frontline.

12. Plaintiff A.C. Thompson is a resident and citizen of the state of California and an investigative reporter who works for ProPublica from an office in Berkeley, California.

13. Defendant NHTSA, a component agency of the United States Department of Transportation, is responsible for reducing deaths, injuries, and economic losses from motor vehicle crashes. The NHTSA is an agency of the United States federal government within the meaning of 5 U.S.C. § 552(f)(1). Plaintiffs are informed and believe that the NHTSA has possession and control of the records sought by the FOIA Request.

**JURISDICTION**

14. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 701-706, and 28 U.S.C. § 1331.

**VENUE**

15. Venue in the Northern District of California is proper under 5 U.S.C. § 552(a)(4)(B), as Thompson's work for ProPublica and his FOIA Request to the Defendant occurred in Alameda County. For the same reason, venue also is proper under 28 U.S.C. § 1391(e).

16. Assignment to the Oakland Division is proper under Civil Local Rule 3-2(c) and (d) because Thompson's work for ProPublica and his FOIA Request to Defendant occurred in Alameda County, within this District.

**FACTS**

17. Thompson, while employed by ProPublica, sent a FOIA Request to the NHTSA on August 24, 2022. He requested copies of:

    a. A Notice of Proposed Rulemaking issued in 1981 ("1981 NPR") regarding a new Federal Motor Vehicle Safety Standard that would have required a new type of rear underride guard for trucks and trailers with a gross vehicle weight of over 10,000 pounds;

    b. Any NHTSA reports, memoranda or other documents explaining the NHTSA's decision not to adopt the 1981 NPR;

    c. Any NHTSA analysis of FARS data used in the development of the 1981 NPR and its subsequent withdrawal;

    d. Any comments received by the NHTSA concerning the 1981 NPR;

     e.    Any additional correspondence between NHTSA staff and outside parties concerning the 1981 NPR;

     f.    Any data, memoranda, correspondence or other records used in the preparation of a Preliminary Regulatory Evaluation on "Combination Truck and Rear Underride Guards" issued by the NHTSA in 1991;

     g.    Any NHTSA data analyses, memoranda, correspondence or other records used in the development of a Supplemental Notice of Proposed Rulemaking issued in 1992 regarding rear underride guards for trucks and trailers;

     h.    Any correspondence from 1991 and 1994 between the NHTSA and members of Congress on the underride issue;

     i.    Any NHTSA analyses, memoranda, reports or other documents generated between January 1, 1991 and August 1, 2022, that estimate the number of underride fatalities occurring in the United States, including any NHTSA analyses of FARS data, NASS-CDS data, CISS data, LTCCS data, TIFA data, or other datasets.

18.    Thompson also asked that the NHTSA conduct searches of both electronic and physical filing systems, given the age of the records, and offered to "cover costs up to $250," even though he was seeking the requested information in his "official capacity as a staff reporter for ProPublica and a correspondent for the PBS series FRONTLINE." A true and correct copy of the FOIA Request to NHTSA is attached as **Exhibit A**.

19.    To date, there has been no response from the NHTSA. The NHTSA has therefore missed the deadline of 20 business days to respond.

20.    Therefore, Plaintiffs have exhausted their administrative remedies.

## FIRST CAUSE OF ACTION

### (Violation of FOIA)

21.    Plaintiffs reallege and incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

DAVIS WRIGHT TREMAINE LLP

22. Plaintiffs' FOIA Request seeks "agency" records within Defendant's custody and control.

23. Defendant has failed to produce any responsive records to Plaintiffs' FOIA Request. Plaintiffs have a legal right under FOIA to obtain the agency records they requested in their FOIA Request, and there exists no "exceptional circumstances" or legal basis for the Defendant's failure to respond to Plaintiffs' FOIA Request and to make these records available.

24. Defendant's failure to make promptly available the records sought by Plaintiffs' FOIA Request violates FOIA, 5 U.S.C. § 552(a)(3)(A) and (a)(6)(A)(ii), and applicable regulations promulgated thereunder.

25. Plaintiffs are entitled to declaratory relief finding that Defendant has violated FOIA and are immediately entitled to receive all records responsive to their requests.

26. Plaintiffs are further entitled to injunctive relief, ordering Defendant to immediately produce copies of all records responsive to Plaintiffs' FOIA Request without further delay.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the Court award them the following relief:

A. Declare that Defendant violated FOIA in their failure to respond to Plaintiffs' FOIA Request;

B. Order Defendant to immediately disclose the requested records to Plaintiffs and enter an injunction prohibiting Defendant from continuing to withhold the requested records;

C. Order Defendant to immediately disclose any responsive records in its possession or control to Plaintiffs;

D. Award Plaintiffs their reasonable costs and attorney's fees;

///

///

///

///

///

///

E. Grant such further relief as the Court may deem just and proper.

Dated: October 31, 2022

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
SAM F. CATE-GUMPERT

By: /s/ *Thomas R. Burke*
    THOMAS R. BURKE

Attorneys for Plaintiffs PRO PUBLICA, INC., and A.C. THOMPSON